IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01220-CMA-MEH

GABRIEL A. MARTINEZ,

        Applicant,

v.

ROBERT KURTZ, Warden of C.D.O.C., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

        Respondents.

---

## RECOMMENDATION FOR DISMISSAL

---

Applicant has pending before this Court an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 ("Application") [docket #2].  The matter is briefed and the Court

determines that an evidentiary hearing is not warranted in this matter.  Under the provisions of 28

U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, this matter has been referred to me for recommendation

on dispositive matters and for ruling on nondispositive matters [docket #11].  Based on the record

contained herein, I recommend[1] that the Application be **denied** and that this matter be dismissed

---

[1]The parties are advised that they shall have ten (10) days after service hereof to serve
and file any written objections in order to obtain reconsideration by the District Judge to whom
this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify
those findings or recommendations to which the objections are being made.  The District Court
need not consider frivolous, conclusive or general objections.  A party's failure to file such
written objections to proposed findings and recommendations contained in this report may bar
the party from a de novo determination by the District Judge of the proposed findings and
recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. §
636(b)(1).  Additionally, the failure to file written objections to the proposed findings and
recommendations within ten (10) days after being served with a copy may bar the aggrieved
party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by
the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d
656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

with prejudice.

## **BACKGROUND**

Applicant is a state prisoner in Colorado, who has filed a *pro se* Application challenging his 2004 state court conviction in the Fremont County District Court.  Applicant alleges that on June 14, 2002, a search warrant was executed at his parents' home against his father, Ernest Martinez, for alleged sexual assault on a child, possession of illegal substances, and possession of child pornography.  There was no mention of the Applicant in the warrant.  However, upon entry into the residence, Applicant's mother informed the police that the back bedroom belonged to the Applicant, and that the Applicant rented the room from his parents.  The door was unlocked and open, so the police proceeded to search the room; they found and seized an unloaded handgun, a small amount of marijuana, a film canister and piece of tin foil both containing methamphetamine, and a number of adult pornographic videotapes.  In the remainder of the house, the police found and seized certain materials necessary for the manufacture of methamphetamine and a computer depicting images of children engaged in sexual conduct.

On July 8, 2002, Applicant was arrested on charges of unlawful possession and manufacture of a controlled substance and the commission of the possession offense as a special offender by having a deadly weapon available for use.  A formal information was filed in March 2003 and amended in May 2003 to include charges of one count of possession of a controlled substance (methamphetamine), one count of manufacture of a controlled substance (methamphetamine), one count of the special offender charge (possession of weapon), and two counts of sexual exploitation of children.

Both before and during trial, Applicant asked the trial court to suppress the evidence found

in his bedroom, arguing that because he was not named as a suspect in the search warrant and because he rented a separate room within the residence, he had a constitutionally protected reasonable expectation of privacy that was violated when the police entered his room without a warrant.  The trial court held a hearing and denied the motions to suppress, finding that the search of Applicant's bedroom did not violate his constitutional reasonable expectation of privacy, since there was no reason to expect that the home contained a separate dwelling unit and since exigent circumstances existed to proceed with the search in that, had the police officers stopped the search to obtain a new warrant, Applicant's mother could have entered the room and destroyed evidence. Docket #2 at 41.

In July 2004, the case proceeded to trial at which Applicant was convicted of Count 1: unlawful possession of a schedule II controlled substance, Count 2: special offender, possession of a deadly weapon during unlawful possession of controlled substance, Count 3: unlawful manufacture of a controlled schedule II substance, and Count 4: possession of sexually exploitive materials. Applicant was found not guilty of Count 5 (possession of sexually exploitive materials with intent to distribute).  Applicant was sentenced to eight years' incarceration for Counts 1-3 and to 18 months' incarceration to run consecutively for Count 4.

On direct appeal, Applicant raised the same issues he raises in this action: (1) whether the trial court erred in admitting evidence seized from his bedroom "outside the scope of the search warrant"; (2) whether the special offender statute is constitutional as applied to Applicant; (3) whether sufficient evidence existed to establish that Applicant engaged in the manufacture of a controlled substance; and (4) whether sufficient evidence existed to establish that Applicant possessed sexually exploitive material of children.  The Colorado Court of Appeals affirmed the

judgement and sentence finding that the search of Applicant's bedroom was reasonable since the suspect Ernest Martinez, had access to the bedroom and, thus, evidence could be reasonably found there, that Applicant possessed an operable weapon available for use while in possession of a controlled substance, and that sufficient evidence existed to find Applicant unlawfully manufactured methamphetamine and possessed sexually exploitive material of children.  The Colorado Supreme Court denied Applicant's petition for writ of certiorari on August 16, 2007.

Thereafter, Applicant filed a motion for postconviction relief under Colo. R. Crim. P. 35(b), asking for a reduction of his sentence based upon good conduct.  The trial court granted the motion insofar as his consecutive 18-month sentence was changed to run concurrently with his eight-year sentence.

On June 9, 2008, the Applicant filed his Application for federal habeas relief in this Court alleging three claims: (1) in violation of his Fourth Amendment rights, the trial court admitted evidence seized from Applicant's bedroom during a "warrantless search"; (2) in violation of his First and Fourteenth Amendment[2] rights, the special offender statute was vague and overbroad as applied to Applicant; and (3) in violation of his Fourteenth Amendment due process rights, the evidence was insufficient to convict Applicant of manufacturing methamphetamine and possessing sexually exploitive materials of children.  For his first claim, Applicant argues there was no evidence demonstrating that the original suspect and owner of the home, Ernest Martinez, had access to or was in control of Applicant's bedroom.  Second, Applicant contends that the trial court erred when it ruled that the gun found in Applicant's bedroom simply needed to "appear" operable for the

---

[2]Applicant also asserts a violation of his Fifth Amendment due process rights; however, as a claimant against a state entity, Applicant's due process rights arise under the Fourteenth Amendment.

special offender statute to apply, and that there was actually no evidence regarding whether the gun was functional.   Third, Applicant asserts that the evidence regarding the manufacture of methamphetamine showed that the items found in his father's garage could have both legitimate and illegitimate purposes and, thus, were not sufficient to support a conviction.   Finally, Applicant argues that, although sexually exploitive photographs were found on his father's computer, the evidence presented was insufficient to convict him of possession of those photographs.

Respondents contend that, because Applicant had a full and fair opportunity to litigate his Fourth Amendment claim in state court, he is precluded from bringing the claim in a habeas petition. Furthermore, Respondents argue the Applicant has failed to establish that the trial court's ruling regarding the operability of the gun is contrary to or an unreasonable application of clearly established Supreme Court precedent.   Finally, Respondents claim that the jury rationally found proof beyond a reasonable doubt that Applicant was guilty of complicity in the manufacture of methamphetamine and of possessing sexually exploitive materials of children.

## DISCUSSION

Applicant proceeds in this action *pro se*.   As a *pro se* litigant, Applicant's filings are entitled to liberal construction by this Court.   *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, the Court should not be the *pro se* litigant's advocate.   *Hall*, 935 F.2d at 1110.

## I.   Standard of Review

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.   *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

"When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.'  The court does not review a judgment, but the lawfulness of the [applicant's] custody *simpliciter*."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals which was the final substantive proceedings in the state appellate review process.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred.  *See Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999) (citing *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999)).  Under the AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court has stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it

confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*,  544 U.S. 133, 141 (2005) (internal citations omitted); *see also Taylor v. Workman*, 554 F.3d 879, 887 (10th Cir. 2009).  The first inquiry is whether the clearly established federal law exists on the issue; only once this is established must the Court determine whether the state court's application of such law is objectively unreasonable.  *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008) (citing *Carey v. Musladin*, 549 U.S. 70 (2006)) ("The absence of clearly established federal law is dispositive under § 2254(d)(1)").  "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The state court need not cite to Supreme Court cases in reaching its decision, provided that "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  Accordingly, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the Petitioner as the federal standard, this Court may presume an adjudication on the merits and apply AEDPA deference. *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* must be applied. *Herrera v. Lemaster*,

301 F.3d 1192, 1200 (10th Cir. 2002).  Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.  This requires more than just an incorrect application of federal law, requiring instead a showing "somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006) (quoting *Henry v. Poole*, 409 F.3d 48, 68 (2d Cir. 2005)).  Thus, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.* at 671.

Factual findings made by the state trial and appellate courts are presumed correct, with the petitioner bearing the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003).  The burden remains, because "whether a state court's decision was unreasonable must be assessed in light of the record [the court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (citations omitted).

According to the Tenth Circuit, this Court "owe[s] deference to the state court's *result,* even if its reasoning is not expressly stated." *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999) (emphasis in original).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

Finally, if the state court does not address a claim on the merits, this Court must review the claim de novo and the deferential standards in 28 U.S.C. § 2254(d) are not applicable.  *See Gipson v.. Jordan,* 376 F.3d 1193, 1196 (10th Cir. 2004).

8

II.     **Applicant's Claims**

According to Respondents, Applicant's claims appear to be timely and exhausted.  Docket #6.  The Court agrees; thus, no procedural bar applies to this case and the Court will proceed with an analysis of Applicant's claims on the merits.

A.      Claim One: Warrantless Search

Applicant claims that, in violation of his Fourth Amendment rights, the court erroneously admitted evidence found in his bedroom at his parent's house although the room was a separate residence for which the police should have obtained a separate warrant.

Federal habeas review of Fourth Amendment claims is governed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone*, the Court stated:

> [W]here the State has provided an opportunity for full and fair litigation of the Fourth Amendment Claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id*. at 494.

The Tenth Circuit Court of Appeals has noted that "[a]lthough *Stone* announced a verbal standard, it failed to clothe the words 'opportunity for full and fair litigation' with any precise meaning." *Gamble v. State of Okla.*, 583 F.2d 1161, 1165 (10th Cir. 1978).  Therefore, the Tenth Circuit has determined that the meaning of the phrase, "opportunity for full and fair litigation," "includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain,* 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least a colorable application of the correct Fourth Amendment constitutional standards." *Gamble,* 583 F.2d at 1165.

"Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards." *Id.*; *see also Sanders v. Oliver*, 611 F.2d 804, 808 (10th Cir. 1979).

Here, Applicant argues that the trial court misapplied the Colorado Supreme Court's ruling in *People v. Lucero*, 483 P.2d 968 (Colo. 1971) to the facts presented by erroneously finding exigent circumstances to justify the warrantless search.  In addition, Applicant contends the appellate court ignored his argument, based upon the Supreme Court's opinion in *Rakas v. Illinois*, 430 U.S. 128, 140 (1978), that a search of a guest room in a single family home which is rented or used by a third party and, to the extent that the third party acquires a reasonable expectation of privacy, requires a warrant.   Thus, this Court must determine whether the appellate court applied incorrect constitutional standards and, if not, whether it "wilfully refused" to do so.

According to the Applicant, he filed a motion to suppress the evidence found in his bedroom on January 2, 2003.  The trial court held an evidentiary hearing, including witness testimony, on the motion on January 27, 2004 [*see* State Court Record, Vol. 12], and on February 25, 2004, issued a written ruling denying the motion [Record, Vol. 4].  Relying primarily on *People v. McGill*, 528 P.2d 386, 390 (Colo. 1974), the trial court concluded that the police officers had no reason to expect a separate dwelling unit upon entry into the house, that exigent circumstances existed since evidence could have been lost or destroyed by the Applicant's mother (who had access to the room) had the officers' delayed the search to obtain a new warrant for the Applicant's bedroom, and that it was reasonable for the officers to search Applicant's room for the weapon, which was reported in the warrant but had not been recovered during the search of the remainder of the house.

The Colorado Court of Appeals did not disturb the trial court's factual findings, but rather,

declined to follow its legal analysis in determining that exigent circumstances existed to justify the search. *See People v. Martinez*, 165 P.3d 907, 910 (Colo. Ct. App.), *cert. denied sub nom*, 2007 WL 2296969 (2007). Specifically, the appellate court noted that it was unclear whether sufficient exigency existed to allow immediate police entry into Applicant's bedroom, since the room was allegedly unoccupied and officers could have prevented access to the room while they attempted to obtain another warrant. *Id.* Instead, applying the rulings in *People v. Lucero*, 483 P.2d 968, 970 (Colo. 1971) and *People v. Ward*, 508 P.2d 1257 (Colo. 1973), the appellate court found first that the officers neither knew nor should have known that the house contained multiple dwelling units and, second, based on the facts known to the officers during the execution of the warrant, the officers acted reasonably in concluding that Applicant's father (the person named in the search warrant) had the ability to access Applicant's room for the purpose of concealing incriminating evidence. *Id.* at 911-12.

Upon this Court's review, it appears that the trial court assumed without deciding that the police officers conducted a warrantless search of Applicant's bedroom but concluded that exigent circumstances existed to justify the search. However, in analyzing the within Application, this Court is concerned with proceedings at the appellate court. *See supra* page 6. The Court agrees with the Colorado Court of Appeals that, since the warrant in this case encompassed the entire single-story home at 105 Fremont Street, Rockvale, the first question to answer is whether an additional warrant was necessary to conduct the search of the Applicant's bedroom within that residence.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend IV. "Fourth Amendment rights are personal rights which, like some other

constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Id.*

Thus, to ascertain whether a search has violated the rights of the particular defendant who seeks to exclude the resulting evidence, the courts consider two primary factors: whether the defendant manifested a subjective expectation of privacy in the area searched, and whether society would recognize that expectation as objectively reasonable. *Bond v. United States*, 529 U.S. 334, 338 (2000) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). The defendant has the burden of demonstrating that he is entitled to Fourth Amendment protection. *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998); *see also Rakas*, 439 U.S. at 130, n. 1.

"A court must look at all of the facts and circumstances to determine whether a defendant's subjective expectation of privacy is legitimate." *United States v. Abreu*, 935 F.2d 1130, 1133 (10th Cir. 1991). Because expectations of privacy derive in part from the right to exclude others from the property in question, lawful possession is an important consideration in determining whether a defendant had a legitimate expectation of privacy in the area searched. *United States v. Lyons*, 992 F.2d 1029, 1031 (10th Cir. 1993); *see also United States v. Carr*, 939 F.2d 1442, 1446 (10th Cir. 1991) ("[i]mportant considerations in the expectation of privacy equation include ownership, lawful possession or lawful control of the premises searched"). In addition, a court may consider whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises. *See, e.g., Rawlings v. Kentucky,* 448 U.S. 98, 105 (1980); *United States v. Heckenkamp,* 482 F.3d 1142, 1146 (9th Cir. 2007); *United States*

12

*v. Brown,* 408 F.3d 1049, 1051 (8th Cir. 2005).

A person may have a legitimate expectation of privacy in the house of someone else. *Minnesota v. Carter*, 525 U.S. 83, 89 (1998) (citing *Minnesota v. Olson,* 495 U.S. 91 (1990)) (an overnight guest in a house had the sort of expectation of privacy that the Fourth Amendment protects)).  Similarly, a search of a guest room in a single family home which is rented or used by a third party, and, to the extent that the third party acquires a reasonable expectation of privacy, requires a warrant.  *United States v. Cannon*, 264 F.3d 875, 879 (9th Cir. 2001), *cert. denied*, 534 U.S. 1143 (2002).  Two factors direct this inquiry: (1) whether the individual has taken steps to "preserve" the area as "private;" and (2) whether that person's expectation of privacy was reasonable. *Id.* The court must also examine whether the homeowner and/or target of the investigation had control of the entire house and access to the area claimed by the defendant. *See United States v. Gilman*, 684 F.2d 616 (9th Cir. 1982); *see also United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991) (upholding search warrant for entire family residence where target of investigation has access to all areas); *Mena v. City of Simi Valley*, 226 F.3d 1031, 1038 (9th Cir. 2000) (if defendant is in control of the whole premises entire property is suspect).

With these principles in mind, the Court recommends finding that the Court of Appeals' decision was neither contrary to nor involved an unreasonable application of clearly established federal law.  Considering the trial court's factual findings, including that the police officers reasonably believed the dwelling was not a multiple occupant building, that Applicant's bedroom door was open at the time the officer(s) entered the house, and that there was no physical evidence supporting Applicant's mother's statement that she only entered Applicant's bedroom to do the laundry, the appellate court determined that Applicant's father, who owned the single-family

residence that was the subject of the search warrant, had the ability to access Applicant's room for the purpose of concealing incriminating evidence. *Martinez*, 165 P.3d at 912. Thus, applying the correct constitutional standards as set forth in *Carter*, *Carr*, *Cannon*,[3] and *Ayers*, *supra*, regarding whether the Applicant took steps to preserve his bedroom as private, the appellate court concluded that Applicant did not acquire a reasonable expectation of privacy in his bedroom necessary to require a separate search warrant.[4] *Id.*

Consequently, this Court recommends that the District Court deny the Application with respect to Claim One.

B.      Claim Two: Vague and Overbroad Special Offender Statute

Applicant contends that a Colorado criminal statute, under which he was charged and convicted, is unconstitutionally vague and overbroad as applied to him in violation of his First and Fourteenth Amendment rights. Specifically, he argues that the state courts committed constitutional error when they ruled that the definition of "firearm" under the statute includes a weapon that need only *appear* capable of firing a bullet. Traverse at 13-14.

The statute at issue here provides for sentence enhancement for certain felony convictions, including Applicant's possession of methamphetamine, under the following relevant circumstance:

---

[3]Applicant contends that the fact he rented his bedroom from his parents demonstrates he "made a distinct effort to maintain his room as private." Traverse at 11. However, under the standard set forth in *Cannon* (cited by Applicant), even if a third party rents a room in a single-family home, he still must demonstrate that he possesses a reasonable expectation of privacy in the room.

[4]Even if the District Court were to find that the appellate court failed to apply the correct and controlling standards in this case, the Applicant has failed to argue, and this Court finds no basis upon which to determine, that the appellate court wilfully refused to do so. *See Gamble,* 583 F.2d at 1165.

"The defendant used, displayed, possessed, or had available for use a deadly weapon as defined in section 18-1-901(3)(e) . . ." *See* Colo. Rev. Stat. § 18-18-407(1)(f).  The definition of "deadly weapon" is "any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury: (I) a firearm, whether loaded or unloaded . . . ."  Colo. Rev. Stat. § 18-1-901(3)(e)(I).  "Firearm" is defined as "any handgun, automatic revolver, pistol, rifle, shotgun, or other instrument or device *capable or intended to be capable* of discharging bullets, cartridges, or other explosive charges." Colo. Rev. Stat. § 18-1-901(3)(h) (emphasis added).

Contrary to Applicant's assertion, the appellate court concluded that the evidence presented at trial was sufficient to establish that the gun was operable, not that it *appeared* to be operable. Thus, the appellate court rejected the overbreadth argument stating that this evidence, together with evidence of the proximity of the gun to the methamphetamine found in Applicant's bedroom, established that the special offender statute was properly applied to Applicant.  *See Martinez*, 165 P.3d at 913-914.

This Court recommends finding that the appellate court's decision was neither contrary to nor an unreasonable application of clearly established federal law.  As stated above, factual findings made by the state trial and appellate courts are presumed correct, with the Applicant having the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Darks*, 327 F.3d at 1007.   The overbreadth doctrine "prohibits a statute from making criminal otherwise innocent and constitutionally protected conduct."  *United States v. Thomas*, 410 F.3d 1235, 1243 (10th Cir. 2005) (quoting *United States v. Pinelli,* 890 F.2d 1461, 1472 (10th Cir. 1989)). The primary question then is whether the statute includes within its prohibitions conduct that may not be punished because it is protected by the First and Fourteenth Amendments.  *Id.*  Similarly, the

"void for vagueness doctrine requires that a penal statute define a criminal offense with sufficient specificity that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* (quoting *Pinelli*, 890 F.2d at 1470). According to the Supreme Court, the most important aspect of the vagueness doctrine "is not the actual notice [of prohibited conduct], but the other principal elements of the doctrine – the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith v. Goguen,* 415 U.S. 566, 574 (1974).

Upon Applicant's motion for judgment of acquittal challenging the constitutionality of the special offender statute as applied to him, the trial court found that, pursuant to the statute, a firearm "need merely be capable of firing ammunition" and "[i]t need not be loaded, it can be locked, it's still a deadly weapon." Record, Vol. 15, 182:18-21. In addition, the trial court found that, based on the evidence presented, the firearm found in Applicant's bedroom was a "deadly weapon because it's capable of firing" (*id.* at 185: 6-7) and the "gun was in close proximity to the drugs." *Id.* at 183: 4-5. The issue was properly presented to the jury in this case, *see, e.g., People v. Vigil*, 758 P.2d 670, 674 (Colo. 1988), which found by Special Interrogatory beyond a reasonable doubt that Applicant had available for use a deadly weapon and that the deadly weapon was a firearm. Record, Vol. 2 at 148-151, 161. On direct appeal, the appellate court found

> Here, police officers testified that they searched defendant's bedroom and discovered a vial containing a small amount of a substance later determined to be methamphetamine. The officers also found an unloaded revolver on a shelf in the same room.
>
> One officer testified, based on his experience and training as a small-arms specialist, that the handgun appeared to be capable of firing a bullet. In addition, an inference of operability was established by evidence of the precautions which defendant had taken to secure the weapon. Specifically, the officers testified that the revolver's trigger mechanism was secured with a padlock, and defendant testified that he kept

the key to that lock on his keychain.

> We conclude the foregoing evidence was sufficient to establish that the gun was operable. Contrary to defendant's suggestion, the fact that the gun was unloaded is immaterial. *See* §18-1-901(3)(h). Moreover, the proximity of the gun to the methamphetamine was sufficient to establish that it was "available for use" within the meaning of §18-18-407(1)(f).

*Martinez*, 165 P.3d at 913-914.

The record is devoid of a factual finding by the state courts that the gun merely appeared to be operable. Applicant has failed to rebut by clear and convincing evidence the facts supporting the jury's, trial court's and appellate court's findings that the firearm was operable. His supposition that the firearm may or may not have been operable is insufficient.

Therefore, the challenged statute has not made criminal otherwise innocent and constitutionally protected conduct as applied to Applicant. Based upon the factual findings made at the trial and appellate levels, which are unrebutted by clear and convincing evidence, the state courts' application of the special offender statute to Applicant is not unconstitutional. This Court recommends that the District Court deny the Application with respect to Claim Two.

C.    Claim Three: Insufficient Evidence for Convictions

Applicant asserts that his conviction was obtained as a result of evidence that is insufficient to persuade a properly instructed, reasonable jury of his guilt beyond a reasonable doubt. Specifically, Applicant alleges there was insufficient evidence to establish that he was engaged in the manufacturing of methamphetamine (Count III) and in the sexual exploitation of a child by possessing child pornography (Count IV).

The standard for sufficiency of the evidence, which was clearly established when Applicant was convicted, is set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Supreme

Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

"Sufficiency of the evidence is a mixed question of law and fact." *Maynard v. Boone,* 468 F.3d 665, 673 (10th Cir. 2006). Under 28 U.S.C. § 2254(d), a federal habeas court must determine whether the facts are correct and the law was properly applied to the facts. *Maynard,* 468 F.3d at 673. The determination of a factual issue by a state court is presumed to be correct and the applicant has the burden of rebutting this presumption by clear and convincing evidence. *Id.*; 28 U.S.C. § 2254(e)(1).

### 1.   Manufacturing Methamphetamine

Applicant argues that the items found in his father's garage - propane gas tank, a canister containing water, a gas mask, syringes, plastic gloves, empty boxes of cold medicine, used lithium batteries, a postal scale and coffee filters - all had legitimate household uses in their own right and that the prosecution's expert testified there was no clear indication that the items had actually been used to produce methamphetamine; thus, according to the Applicant, the jury heard insufficient evidence to convict him of the crime. In addition, Applicant claims that the appellate court improperly relied upon a complicity instruction given to the jurors and erroneously concluded there was sufficient evidence to connect the Applicant to the alleged manufacture of methamphetamine.

The Colorado Court of Appeals notes that, in addition to the recovered items listed by Applicant, the record reflects evidence of online purchases made by Applicant (and his father) of

large quantities of decongestants containing precursor chemicals commonly used in the manufacture of methamphetamine. *Martinez*, 165 P.3d at 914. The appellate court concluded that the evidence seized from the garage and the computer, considered together with the evidence seized from the Applicant's bedroom, sufficiently supports the jury's verdict. *Id.*

Applicant has not established by clear and convincing evidence that the jury, trial court and appellate court erred. The jury heard from the officers present during the search of the garage that they found in or near a pot-bellied stove blister packs of pseudoephedrine, lithium batteries, funnels with filters in them, syringes, sodium chloride .09, a black backpack with a gas mask inside, a propane tank and a digital scale. Record, Vol. 13-14. In addition, the jury heard from an expert in the manufacture of methamphetamine who examined the items found in the garage. Vol. 14 at 147. While the expert testified that the items seized are commonly used in the manufacture of methamphetamine, he also opined that none of the items contained any residue or evidence of methamphetamine. *Id.* at 161-68. The jury also heard from a computer forensics expert who opined that both the Applicant and his father conducted online searches and made purchases for decongestants containing pseudoephedrine [vol. 14 at 215-217]; at the same time, the expert affirmed that other people can use the Applicant's email address if it is accessible to them [vol. 15 at 26-29].

The Applicant testified that he only used the computer rarely to send a few emails and download pictures of school children for a teaching portfolio. Vol. 15 at 109-110. He asserted that he never purchased medication online, but lent his father his credit card so that he could purchase medication. *Id.* at 116-17. The Applicant testified that his father was on the computer very often [*id.* at 112], and that he himself had his own laptop computer that was not connected to the Internet

[*id.* at 109].  He also asserted that he did not use methamphetamine [*id.* at 137] and rarely went out to the garage, where, in his words, his father stored "junk" [*id.* at 141].

In ruling on Applicant's motion for judgment of acquittal, the trial court properly analyzed whether the relevant evidence, when viewed as a whole and in the light most favorable to the prosecution, was substantial and sufficient to support a conclusion by a reasonable jury that the defendant is guilty beyond a reasonable doubt.  *See People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973).  The trial court found that all of the materials seized in the garage independently had legitimate uses, but, when considered together with the bag containing methamphetamine found in the pot-belly stove, were consistent with instruments used to manufacture methamphetamine. Record, Vol. 15 at 61-62.  The jury was properly instructed on the elements of the crime involving methamphetamine manufacture and on a complicity theory, weighed the evidence presented by both the prosecution and the Applicant, and found the Applicant guilty of the crime.  Vol. 2 at 160.  On review, the appellate court applied the same law as the trial court in reviewing the sufficiency of the evidence, listed the materials found in the garage together with evidence of online purchases of "large quantities of decongestants," and determined that all evidence found in the garage, considered together with that found on the computer and in Applicant's bedroom sufficiently supported the jury's verdict.  *Martinez*, 165 P.3d at 914.

This Court recommends finding that the Applicant has failed to rebut the correctness of the state courts' factual findings by clear and convincing evidence and that the courts' application of the law to the facts is consistent with, and not contrary to, the Supreme Court's opinion in *Jackson*. In addition, the Court recommends finding that the Court of Appeals did not "improperly rely" on a complicitor liability instruction; in its opinion, the court noted that the jury was properly instructed

on complicitor liability, then proceeded to list the evidence and determine whether it was sufficient to sustain the conviction. *Id.* The Applicant makes no argument that the law on which the Court of Appeals relied is incorrect. Therefore, the Applicant has failed to show that the state courts' application of the law concerning sufficiency of the evidence violated his due process rights.

2.     Possession of Sexually Exploitive Materials of Children

Applicant contends that there was insufficient evidence to establish that he was engaged in sexual exploitation of a child by possession of child pornography. Specifically, Applicant asserts that, although there was substantial evidence presented establishing the graphic nature of the pornographic photographs found on his father's computer, there was no evidence that clearly connected the Applicant to the photos. He argues that the evidence presented at trial established only that he had access to and used the computer on a few occasions, which is not sufficient to convict him of the crime.

Again, the Court recommends finding that the Applicant has not established by clear and convincing evidence that the jury, trial court and appellate court erred. The jury heard testimony from a computer forensics expert that he searched two computers seized from the residence, but found child pornography only on the computer that was registered to Applicant's father and located in the living room. Record, Vol. 14 at 191-92. On that computer, the expert found 78 pornographic images of children on the N, O, P, Q, R, and S drives. Vol. 15 at 42, 49. He also found an email account in the name of "owlofstone," from which it appeared that both the Applicant and his father sent and received emails.[5] Vol. 14 at 212. The expert testified that his search revealed that the

---

[5]This is the same email account on which the expert testified that he found evidence of online purchases of pseudoephedrine using the Applicant's credit card.

"owlofstone" account received information from several listserves containing references to sexual activity with young girls.  Vol. 14 at 209, 210, 236-37.

The expert also testified that the police had seized a laptop computer belonging to the Applicant, but did not search it before returning the computer to Applicant upon his request.  In addition, the expert testified that the non-pornographic photographs of children taken by the Applicant were found on a different drive (G drive) than the drives on which the pornographic images were found.  Vol. 15 at 49.

The Applicant testified that he used the home computer to email people he knew through the American Legion and to download his photographs of children taken at the school where he taught.  Vol. 15 at 109-110.  He stated that he intended to use the photographs for a portfolio he created for job interviews.  *Id.* at 110.  The Applicant explained that he did not use his own computer for these applications because it was not connected to the internet and did not contain the software necessary to  download photographs.  *Id.* at 110-11.  The Applicant asserted that he's "never done anything with child pornography."  *Id.* at 111.

Upon Applicant's motion for judgment of acquittal regarding the child pornography charges, the trial court found there was "clearly enough evidence" to support a conclusion by a reasonable jury that defendant is guilty beyond a reasonable doubt.  Vol. 15 at 62.  The appellate court acknowledged the absence of any direct evidence establishing that Applicant obtained or viewed the child pornography, but determined that circumstantial evidence, including that the email account used by both the Applicant and his father had joined an online listserve group that distributed emails relating to sexual activity with young girls, was sufficient to prove the Applicant knowingly possessed the pornographic images of children on the computer.  *Martinez*, 165 P.3d at 915.

22

Further, the appellate court found that the jury was properly instructed that proof of exclusive possession was not required to find the Applicant guilty. *Id.*

This Court recommends finding that the state courts' decisions were neither contrary to, nor involved an unreasonable application of, clearly established law as set forth in *Jackson*, and were not based on an unreasonable determination of the facts in light of the evidence presented at trial. The jury was instructed properly on the elements of the crime, including the definitions of "knowing" and "possession." *See* Vol. 2 at 133, 138 and 148. They weighed the evidence heard from both the prosecution and the Applicant, and found the Applicant guilty of the crime. On review, the appellate court applied the proper law concerning sexual exploitation of a child in Colorado to find that there was sufficient circumstantial evidence to support a conviction. *Martinez*, 165 P.3d at 915. The Applicant makes no argument that the law on which the jury and appellate court relied was incorrect.

Consequently, this Court recommends that the District Court deny the Application with respect to Claim Three.

**III.    Conclusion**

In viewing the merits of the Applicant's claims, Applicant is not entitled to relief in this Court under 28 U.S.C. § 2254. Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby RECOMMEND that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [filed June 9, 2008; docket #2] be **denied**, and that this case be dismissed with prejudice.

Dated this 26th day of October, 2009, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge